UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE NORTHERN CALIFORNIA PLASTERERS HEALTH AND WELFFARE TRUST FUND, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMES ISLAND PLASTERING INC,<br><br>    Defendant.<br>_____/ | No. C-14-03061-PJH (DMR)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [DOCKET NOS. 17, 20]** |

    Plaintiffs Boards of Trustees for Laborers Trust Funds move pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendant James Island Plastering, Inc. Motion [Docket No. 17] at 1. The Honorable Phyllis J. Hamilton referred the matter to this court for a report and recommendation. *See* Order [Docket No. 18]. Plaintiffs seek unpaid employee fringe benefit contributions and related interest and liquidated damages, as well as attorneys' fees and costs. Plaintiffs also move for injunctive relief. The court held a hearing on the motion on December 11, 2014; Defendant did not appear.

    For the reasons stated below, the court recommends that the motion be **granted**.

## I. BACKGROUND

**A. Factual Allegations**

United States District Court
For the Northern District of California

Plaintiffs are the Boards of Trustees of the Northern California Plasterers Health and Welfare Trust Fund, the Northern California Plastering Industry Pension Trust Fund, the Plasterers Local Union No. 66 Supplemental Retirement Benefit Fund, the Northern California Plasterers' Joint Apprenticeship and Training Trust Fund, and the Plastering Industry Labor-Management Cooperation Committee Trust Fund ("the Trust Funds"). Compl. [Docket No. 1] at ¶ 1. The Trust Funds are multi-employer benefit plans within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3), (37), and 1132(d)(1) and each is a jointly trusted employee benefit plan within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). Compl. at ¶ 1.

Defendant is an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. Compl. at ¶ 2.

Defendant agreed to be bound by the terms of the Plasterers Master Agreement (the "collective bargaining agreement," or "CBA") between the Contracting Plasterers Association of Alameda and Contra Costa Counties[1] and Golden Gate Lodge of Plasterers' and Shophands' Local Union No. 66, O.P.C.M.I.A (the "union"), and all subsequent CBAs. Compl. at ¶ 11; Martinez Decl. [Docket No. 17-1] at ¶¶ 2-5, Exs. A (2005-2009 Plasterers CBA), B (2009-2013 Plasterers CBA), C (2013-2017 Plasterers CBA), D (Letter of Assent signed by Defendant). The CBAs provide that individual employers agree to be bound by all of the provisions of the trust agreements establishing the Trust Funds. Compl. at ¶ 12; Martinez Decl. at ¶ 6. Employers must make contributions to the Trust Funds pursuant to the terms of their CBAs. Compl. at ¶ 1.

Pursuant to the CBAs, Defendant is required to submit monthly reports known as "transmittals" stating the hours worked during the month by each covered employee, and to pay fringe benefit contributions for each employee. Compl. at ¶ 13. The fringe benefit contributions are considered delinquent if they are not paid on or before the fifteenth day of the month following the

---

[1] In August 2011, the Contracting Plasterers Association of Alameda and Contra Costa Counties merged into the Wall and Ceiling Alliance, which is now the successor employer association to the Contracting Plasterers Association of Alameda and Contra Costa Counties. Chang Decl. [Docket No. 17-7] at ¶ 2.

2

month in which the hours were performed. Martinez Decl. at ¶ 7, Exs. B, C. The CBAs also provide for liquidated damages of 20% on the principal owed or $200, whichever is greater, for delinquent fringe benefit contributions, and interest at the rate of 10% per year until paid. Martinez Decl. at ¶¶ 8-9, Exs. B, C. The CBAs require Defendant, upon request, to submit to an audit by auditors for the Trust Funds. Martinez Decl. at ¶ 10, Exs. B, C.

Plaintiffs allege that Defendant have failed to pay employee fringe benefit contributions for the periods March 2013, April 2013, July 2013, January 2014, and February 2014, in the principal amount of $44,924.45. Compl. at ¶ 20; Martinez Decl. at ¶ 17.

Plaintiffs filed this action on July 7, 2014, alleging that Defendant failed to make contributions pursuant to 29 U.S.C. § 1145, such that Plaintiffs may recover due and unpaid benefit contributions, interest, liquidated damages, attorneys' fees, and filing costs pursuant to 29 U.S.C. § 1132(g)(2). Plaintiffs also allege that Defendant breached the CBAs. Compl. at ¶¶ 17-22, 28-31. In addition to the remedies set forth above, Plaintiffs request injunctive relief in the form of an order requiring Defendant to submit to an audit. Compl at ¶¶ 23-27.

## II. DEFAULT JUDGMENT

**A. Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment following a defendant's default. Fed. R. Civ. P. 55(b)(2). Whether to enter a judgment lies within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) (citations omitted).

Before assessing the merits of a default judgment, a court must confirm it has subject matter and personal jurisdiction, as well as ensure adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these requirements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted). In this analysis, a "court takes 'the well-pleaded factual allegations' in the complaint 'as true'," *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007), "except those relating to the amount of damages." *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citations omitted).

**B. Analysis**

This court has subject matter jurisdiction over this case pursuant to 29 U.S.C. §§ 185 (granting labor union organizations power to sue employers in federal court) and 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). Defendant qualifies as an "employer" under section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and as an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. Compl. at ¶ 1. The court exercises personal jurisdiction over Defendant because Defendant is a California corporation and Plaintiffs allege on information and belief that Defendant "resides and engages in . . . business in Alameda County, California, and surrounding areas." Compl. at ¶ 3.

Regarding the adequacy of service of process, Federal Rule of Civil Procedure 4(h) authorizes service of process on corporations in the manner prescribed by Rule 4(e)(1), which allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1) and (h)(1)(A). Under California law, service on a corporation may be effectuated by "delivering a copy of the summons and complaint (a) to the person designated as agent for service of process . . . or (b) to the president, chief executive officer, or other head of the corporation . . . a general manager, or a person authorized by the corporation to receive service of process . . . ." Cal. Civ. Code. § 416.10. "In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in section 416.10 . . . , a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(a). The court has reviewed the proof of

service and the record and finds that the summons and complaint were properly served on Defendant. *See* Docket No. 12 (Certificate of Service showing that summons and complaint were left with the person in charge of Defendant's office on August 25, 2014 at 3:05 p.m. and subsequently mailed to Defendant's office).

Turning to the *Eitel* factors, under the first factor Plaintiffs will suffer great prejudice if the court does not enter a default judgment because Plaintiffs are otherwise likely to be "without other recourse for recovery." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also U.A. Local No. 467 Trust Fund v. Hydra Ventures, Inc.*, Case No. 12-CV-03746 EMC, 2013 WL 1007311 at *6 (N.D. Cal. Mar. 13, 2013) (first *Eitel* factor weighed in favor of default judgment for plaintiffs trust funds against defendant employer who had failed to make employee benefits contributions because plaintiffs would otherwise likely be without a remedy).

Considering the second and third *Eitel* factors, the SAC sufficiently pleads the elements of a violation of 29 U.S.C. § 1145. Section 1145 provides, in relevant part, that "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Thus Plaintiffs must sufficiently allege the following: (1) the plans are multiemployer plans as defined by 29 U.S.C. § 1002(37), (2) the CBAs obligated Defendant to make the disputed contributions; and (3) Defendant did not make the required contributions. *Id.*; *see also Bd. of Trustees of Cement Masons Health & Welfare Trust Fund for N. California v. C & C Concrete Inc.*, No. C 10-03343 LB, 2013 WL 2456560 at *5 (N.D. Cal. June 6, 2013). Plaintiffs allege that Defendant is an employer obligated under the collective bargaining agreement to make contributions to the Trust Funds but failed to do so in accordance with the terms of that agreement. Compl. at ¶¶ 17-22. An employee of Allied Fund Administrators, a third party administrator that assists the Trust Funds with the collection and disbursement of funds, submitted a declaration stating Defendant's monthly transmittals show that Defendant failed to pay contributions due for several months. Martinez Decl. at ¶¶ 12-17. Plaintiffs also produced the monthly transmittal reports

themselves. Martinez Decl. at Ex. E. Thus, Plaintiffs submitted a legally sufficient complaint that is likely to prevail on the merits of the Section 1145 claim, fulfilling the second and third *Eitel* factors.[2]

The fourth *Eitel* factor is the sum of money at stake in the action. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, Case No. 11-CV-02532 LB, 2012 WL 380304 at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, "when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Core Concrete*, 2012 WL 380304 at *4 (recommending default judgment where the amount of money sought against the employer was supported by the evidence and required by both the collective bargaining agreement and 29 U.S.C. § 1132). Here, the sum of the actual damages, interest, and liquidated damages that Plaintiffs seek to recover is $60,895.50.[3] In addition, Plaintiffs seek $2,422.50 in attorneys' fees and $482.90 in costs, for a total of $63,800.90. This sum is appropriate as it is supported by the evidence, tailored to Defendant's alleged misconduct, and properly calculated, as discussed below.

With respect to the fifth *Eitel* prong, Defendant has not appeared in this action, nor contested any of Plaintiffs' material facts. Finally, reviewing the record, there is nothing that suggests Defendant defaulted due to excusable neglect. Examining these facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits. The court therefore recommends that Plaintiffs' motion for default judgment be granted.

### III. DAMAGES

**A. Legal Standard**

---

[2] The Complaint also includes a claim for breach of the collective bargaining agreements, and Plaintiffs seek default judgment on this claim. Mot. at 14-15. Plaintiffs allege that they are the intended third party beneficiaries under the CBAs between Defendant and the union, and that Defendant's failure to pay fringe benefit contributions constitutes a breach of the CBAs. However, Plaintiffs have not alleged that the other parties to the CBAs have performed their obligations. Accordingly, the court determines that the Complaint is insufficient to state a claim for breach of the collective bargaining agreements. At the hearing, the court gave Plaintiffs the opportunity to provide supplemental briefing on this claim, but Plaintiffs declined to so provide. *See* Docket No. 22 (providing further argument for request for injunctive relief, but not for default judgment on breach of CBA claim).

[3] This sum represents: $44,924.45 (unpaid contributions), $6,870.30 (interest), and $9,100.75 (liquidated damages). Martinez Decl. at ¶ 17.

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). With respect to cases arising out of ERISA, the statute declares the following:

> in any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest on unpaid contributions is determined by using the rate provided under the plan. *Id.*

"It is settled Ninth Circuit law that [an award under Section 1132(g)(2)] is mandatory and not discretionary." *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (noting that the statutory language in Section 1132(g)(2) that "the court *shall* award the plan" unpaid contributions, interest, the greater of interest or liquidated damages, and reasonable attorneys' fees). For a mandatory award under section 1132(g)(2), three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (citations omitted).

Plaintiffs meet the first requirement, as the Complaint alleges that Defendant has not paid contributions and related payments for interest and liquidated damages. They satisfy the second requirement with the entry of judgment against Defendant, which the court recommends for the reasons stated above. Finally, the third prong is met through the CBAs, which provide for liquidated

damages and interest on delinquent contributions. *See also Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (section 1132(g)(2)(C)(ii) applies when "the plan provides for liquidated damages").

**B. Unpaid Contributions, Interest and Liquidated Damages**

Plaintiffs have calculated that Defendant owes $44,924.45 in unpaid fringe benefits for the months of March 2013, April 2013, July 2013, January 2014, and February 2014. Martinez Decl. at ¶¶ 12-17. Plaintiffs calculated this amount by reviewing copies of monthly transmittals submitted by Defendant, as required by the CBAs. Martinez Decl. at 11, Ex. E.. The monthly transmittals show the number of hours of covered work by Defendant's employees. *Id*.

As described above, under the operative CBAs, an employer who fails to make the required contributions on or before the fifteen day of the month is subject to interest on the delinquent contribution at a rate of 10% per year, as well as liquidated damages of 20% on the principal owed or $200, whichever is greater. Martinez Decl. at ¶¶ 8-9, Exs. B, C. Plaintiffs calculate interest for the unpaid contributions to be $6,870.30, and liquidated damages for the unpaid contributions to be $9,100.75. Martinez Decl. at ¶¶ 12-17.

Pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to "(A) unpaid contributions, (B) interest on the unpaid contributions, and (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)." With respect to the last, because the liquidated damages provided for under the plan exceeds 20% of unpaid contributions, the court recommends that Plaintiffs' award under Section 1132(g)(2)(C)(ii) be restricted to $8984.89 (which is 20% of the $44,924.45 in unpaid contributions), rather than the $9,100.75 calculated by Plaintiffs.

The court thus recommends that Plaintiffs be awarded **$60,779.64**, the total due for Defendant's unpaid contributions ($44,924.45), with interest ($6,870.30) and liquidated damages ($8984.89).

**C.     Attorneys' Fees and Costs**

8

Plaintiffs incurred $2,422.50 in attorneys' fees representing 12.1 hours billed by three attorneys at the law firm of Neyhart, Anderson, Flynn & Grosboll: (1) Lois Chang, a third-year associate, at the rate of $195 per hour; (2) Eileen Bissen, a former shareholder, at the rate of $225 per hour; and (3) Benjamin Lunch, a current shareholder, at the rate of $225 per hour. Chang Decl. at ¶ 6. Chang, who billed 10 hours of work, is a third-year associate with experience in ERISA collection cases. *Id.* at ¶ 6. Bissen and Lunch billed 2.1 hours of work at the rate of $225 per hour between the two of them.

Counsels' fees of $225 per hour for shareholders and $195 for associates are reasonable San Francisco Bay Area rates for ERISA claims. *See, e.g.*, *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving hourly rate of $400 for associates); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability*, Case No. 08-CV-02560 SI, 2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010) (approving hourly rate of $550 for partner); *Bd. of Trustees of Cement Masons Health & Welfare Trust Fund for N. California v. C & C Concrete Inc.*, No. C 10-03343 LB, 2013 WL 2456560 at *9 (N.D. Cal. June 6, 2013) (approving rate of $325 per hour).

Having reviewed Plaintiffs' billing records, the court finds that the 12.1 hours expended are reasonable. The court therefore recommends that Plaintiffs recover **$2,422.50** in attorneys' fees.

Federal Rule of Civil Procedure 54(d)(1) grants district courts the discretion to award costs to prevailing parties. Fed. R. Civ. P. 54(d)(1); *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013). Plaintiffs have incurred $482.90 in reasonable costs in the action to date. Chang Decl. at ¶ 11, Ex. E (describing filing fees and service costs). The court therefore recommends that Plaintiffs be granted **$482.90** in costs.

**D. Injunctive Relief**

Plaintiffs also seek injunctive relief in the form of an order requiring Defendant to submit to an audit. ERISA authorizes the Trust Funds to audit the records of the employer so long as the audit is done in furtherance of a proper purpose. *Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. California v. C & L Coatings, Inc.*, No. C 12-1368 PJH MEJ, 2012 WL 7748318 at *5 (N.D. Cal. Dec. 18, 2012) (citing *Central States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985)). Plaintiffs have alleged that Defendant is required

under the CBAs to allow the Trust Funds access to its books and records to determine the amount of trust fund contributions due and owing. Compl. at ¶¶ 13, 24-27. The right of employee benefit plans to enforce such power to audit is well established. *Central States*, 472 U.S. at 571–72. Plaintiffs are therefore entitled to an audit of Defendant's financial records, books, papers, and reports to determine whether contributions have been properly paid to the Trust Funds for the period of July 1, 2005 to the present.

### IV. Conclusion

For the foregoing reasons, the court recommends that the District Court **grant** Plaintiffs' motion for default judgment. The court further recommends that the District Court award Plaintiffs unpaid contributions in the amount of **$44,924.45**, interest in the amount of **$6,870.30**, liquidated damages in the amount of **$8,984.89**, attorneys' fees in the amount of **$2,422.50**, and costs amounting to **$482.90**, for a total of **$63,685.04**. The court also recommends that the District Court grant Plaintiffs' request to enjoin Defendant to submit to an audit.

Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on Defendant and file proof of service with the court. Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

IT IS SO ORDERED.

Dated:  December 29, 2014



DONNA M. RYU
United States Magistrate Judge